IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JTH TAX, LLC, *d/b/a Liberty Tax Services*, )
     Plaintiff, )
)
       v. )          Civil Action No. 2:22CV41 (RCY)
)
DAVID LEGGAT, *et al.*, )
     Defendants. )
_____ )

## MEMORANDUM OPINION

This matter comes before the Court on (1) Plaintiff's Motion to Strike Defendants' Second Motion to Dismiss or Transfer ("Plaintiff's Motion to Strike") (ECF No. 23) and (2) Defendants' Motion to Dismiss or Transfer (ECF No. 18). The Motions have been fully briefed, and the Court dispenses with oral argument[1] because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny Plaintiff's Motion to Strike (ECF No. 23) and grant in part and deny in part Defendants' Motion to Dismiss or Transfer (ECF No. 18).

## I. FACTUAL ALLEGATIONS

Plaintiff JTH Tax LC d/b/a Liberty Tax Service ("Liberty") is a franchisor of Liberty Tax Service income tax preparation service centers located throughout the United States. On or about January 31, 2011, Defendants entered into a Franchise Agreement with Liberty, agreeing that – upon termination of the franchise agreement – Defendants would refrain from use of Liberty's literature and forms and return all customer information and Operations Manuals to Plaintiff.

_____

[1] A hearing is not necessary in this case, as the adverse parties had sufficient notice of the motion and all parties have had the opportunity to brief the relevant legal issues and submit pertinent evidence. *See Haberland v. Bulkeley*, No. 5:11cv463, 2012 WL 1564519, at *3 (E.D.N.C. May 2, 2012).

Defendants operated their franchise in California and continued to conduct business after termination of the Franchise Agreement.

The Franchise Agreement (Compl. Ex. A, ECF No. 1-2) specified that Virginia law would govern all disputes arising out of the agreement or any dealings of the parties. The Agreement contained a forum selection clause specifying Virginia Beach state courts and the Eastern District of Virginia – Norfolk Division as the litigation forums. (ECF No. 1-2 at 17.) In addition, the Franchise Agreement contained a California Addendum on the Agreement, the implications of which are at issue in this litigation. (Cal. Addendum, ECF Nos. 16-2, 19-3.) The Addendum states in relevant part that "the franchise agreement requires the application of the laws of the state of Virginia. This provision may not be enforceable under California law." (*Id*. at 2.) The Addendum further explains that California Business and Professions Code Sections 20000 through 20043 "provide rights to the franchisee concerning termination or non-renewal of a franchise. If the franchise agreement contains a provision that is inconsistent with the law, the law will control." (*Id*. at 1; *see* Pl. Supp. Mem. at 5, ECF No. 29.) California Business and Professions Code § 20015 clarifies that "the provisions of this chapter apply to any franchise where either the franchisee is domiciled in this state or the franchised business is or has been operated in this state." (ECF No. 19-1.)

Defendants did not exercise their option to renew their business relationship with Liberty, allowing the Franchise Agreement to expire on January 22, 2019. Plaintiff then sued Defendants based on the following grounds: (1) Defendants continuing to use the physical location and phone number of the former Liberty franchise; (2) Defendants continuing to prepare and file tax returns using the Electronic Filing Identification Number of the former Franchised Business; (3) Defendants' unpaid Royalties and Advertising fees in the amount of $41,489.00; (4) Defendants

2

failing to deliver to Liberty all customer contact information; (5) Defendants failing to deliver to Liberty all customer files, including but not limited to all original copies of customer tax returns and records; (6) Defendants failing to transfer to Liberty the Yelp advertisement page associated with the former Liberty franchise; (7) Defendants failing to return one or more loaned copies of the Operations Manual to Liberty upon expiration of the Franchise Agreement; and (8) Defendants divulging Liberty's trade secrets and confidential information without the consent of Liberty.

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint on January 28, 2022. (ECF No. 1.)  Plaintiff filed a Motion for Preliminary Injunction on the same day. (ECF No. 3.)  On March 31, 2022, Defendants filed a Motion to Dismiss and a Motion to Dismiss or Transfer. (ECF Nos. 16, 18.)  Defendants also filed a Memorandum in Support of the Motion to Dismiss or Transfer on March 31, 2022. (ECF No. 19.)  Plaintiff filed a Memorandum in Opposition on April 14, 2022. (ECF No. 22.)  Defendants filed a Reply on April 19, 2022. (ECF No. 25.)

Plaintiff filed a Motion to Strike the Motion to Dismiss or Transfer and an accompanying Memorandum in Support on April 14, 2022. (ECF Nos. 23-24.)  Defendants filed a Memorandum in Opposition on April 25, 2022. (ECF No. 26.)

On June 3, 2022, the Court ordered parties to file supplemental briefings. (ECF No. 27.) Defendants filed their Supplemental Brief on June 17, 2022. (ECF No. 28.)  Plaintiff also filed its Supplemental Brief on June 17, 2022. (ECF No. 29.)

## III. MOTION TO STRIKE

### A. Party Positions

Plaintiff argues that the Court should strike Defendants' Motion to Dismiss or Transfer as Defendants previously filed a Motion to Dismiss, so they have waived any defenses not listed in their first motion. (Pl. Mem. Supp. Mot. Strike at 3, ECF No. 24.)  By not raising the Rule 12(b)(3) argument in the first motion, it cannot be raised in a second motion. (*Id*.)

Defendants note that the two motions were filed within four minutes of each other. (Def. Br. Opp'n at 2, ECF No. 26.)  These motions were intended to be filed simultaneously, and that intention is noted in multiple court filings. (*Id*. at 3.)  Defendants cite to multiple cases for the proposition that hyper-technical sequencing arguments are meritless. (*Id*. at 4 (citing *Hyper Healing, LLC v. Shapiro*, No. 2:19cv3583, 2020 WL 12618894, at *2 (D.S.C. Aug. 27, 2020). *See also Dewolff Boberg & Assocs. v. Pethick*, 2020 WL 6822834, at *7 (E.D. Tex., Nov. 20, 2020); *Muhammad v. Dollar Tree*, 2020 WL 1530750, at *16-17 (N.D. Ill. Mar., 31, 2020).

### B. Discussion

The Fourth Circuit addressed this issue in *Hyper Healing, LLC v. Shapiro*.  In that case, the defendant filed two, successive motions to dismiss within one minute of each other. *Hyper Healing, LLC*, 2020 WL 12618894, at *2.  The plaintiffs argued that under Federal Rule of Civil Procedure 12(g) "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available but omitted from its earlier motion." *Id*.; Fed. R. Civ. P. 12(g).  The plaintiffs claimed that this barred successive motions asserting Rule 12(b)(6) objections. *Hyper Healing, LLC*, 2020 WL 12618894, at *2.  The Fourth Circuit held that "[d]ue to the nature of electronic filing, the Court finds that Defendant effectively raised his Rule 12 defenses simultaneously, and although each motion was filed in a separate docket number, the

circumstances here are a far cry from the piecemeal litigation that Rule 12(g) seeks to prevent." *Id*.

The Court disagrees with Plaintiff's hyper-technical argument.  The motions were essentially filed simultaneously and, as such, Defendants have not waived their venue argument. Thus, the Court will deny Plaintiff's Motion to Strike.

## IV. MOTION TO DISMISS OR TRANSFER

### A. Choice of Law

These motions are highly dependent on what law applies to which issues. The core dispute is the impact of the California Addendum on the Franchise Agreement.  Defendants argue that California law voids Franchise Agreement provisions requiring litigation outside of California and voids provisions restricting competition. (Br. Opp'n at 4, ECF No. 13.)  Plaintiff contends that Virginia law applies to this dispute. (Reply at 3, ECF No. 21.)

A federal court must use the choice of law rules utilized by state courts in the state in which the federal court sits. *Klaxon Co. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *see Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 65 (2013).  Under Virginia law, the general rule is that "the nature, validity and interpretation of contracts are governed by the law of the place where [the contract was] made." *Black v. Powers*, 628 S.E.2d 546, 554 (Va. Ct. App. 2006) (quoting *C.I.T. Corp. v. Guy*, 195 S.E. 659, 661 (Va. 1938)) (alteration in original); *Klein v. Verizon Commc'n, Inc.*, 674 Fed. App'x 304, 307-08 (4th Cir. 2017).  However, contractual choice of law provisions are an exception to that general rule. *Klein*, 674 Fed. App'x at 308.  "[T]he true test for the determination of the proper law of a contract is the intent of the parties and that this intent . . . will always be given effect except under exceptional circumstances[.]" *Id.* (quoting *Tate v. Hain*, 25 S.E.2d 321, 324 (Va. 1943)).

The Franchise Agreement contains a choice of law clause.  Under § 15(a), "Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto." (Compl. Ex. A at 17, ECF No. 1-2.)  Further, the Franchise Agreement contains a forum-selection clause in which the parties consent to venue and jurisdiction in Virginia courts. (*Id.*)

However, the Franchise Agreement also contains a California Addendum that amended the standard franchise agreement for franchises operating in California. (Cal. Addendum, ECF Nos. 16-2, 19-3; *see* Pl. Supp. Mem. at 5, ECF No. 29.)  The California Addendum states that "[t]he franchise agreement requires application of the laws of the state of Virginia.  This provision may not be enforceable under California law." (Cal. Addendum at 2.)  The California Addendum further states, "California Business and Professions Code Sections 20000 through 20043 provide rights to the franchisee concerning termination or non-renewal of a franchise.  If the franchise agreement contains a provision that is inconsistent with the law, the law will control." (*Id*. at 1.)  Included within California Business and Professions Code Sections 20000 through 20043 is a statute stating that "[t]he provisions of this chapter apply to any franchise where either the franchisee is domiciled in [California] or the franchised business is or has been operated in [California]." Cal. Bus. & Prof. § 20040.5.

The crux of this issue is whether the phrase "[t]his provision may not be enforceable under California law" serves as a choice of law clause overriding the much clearer choice of law clause contained in the Franchise Agreement.  This Court is not the first court to address this issue.

The Sixth Circuit faced an identical dilemma in *Servpro Industries, Inc. v. Woloski*, No. 21-5685, 2022 WL 633844 (6th Cir. Mar. 4, 2022).  The Franchise Agreement expressly stated

that Tennessee law governed, but an addendum contained the exact language at issue in this case,

stating:

> 1. Section 1.2, Renewal, and Section 10, Default and Termination, are amended by adding: California Business and Professions Code Sections 20000 to 20043 provide rights to [the defendant] concerning termination or non-renewal of a Franchise and further provide if the Agreement is inconsistent with California law, California law will control.
> . . .
>
> 6. Section 13.10, Governing Law, is amended by adding: The Agreement requires application of the law of the State of Tennessee. This provision may not be enforceable under California law.

*Id*. at *1. The defendants argued that the California addendum operated as a choice of law

provision. *Id*. The Sixth Circuit disagreed. *Id*. at *2 ("Defendants resist this conclusion by arguing

that § 1 of the California Addendum operates as a choice-of-law provision. The language of the

California Addendum shows that this is incorrect.") The Sixth Circuit noted that the franchise

agreement clearly designated Tennessee law as controlling, and California law only applied when

California law was inconsistent with Tennessee law. *Id*. The Sixth Circuit was silent on the impact

that Section 6 had on the franchise agreement, deciding instead that California law was not

inconsistent with the Tennessee law alleged to be in conflict. *Id*.

The District Court for the District of New Jersey dealt with a similar clause in *Weichert*

*Real Estate Affiliates, Inc. v. CKM16, Inc.*, No. 17-4824, 2018 WL 652331 (D.N.J. Jan. 31, 2018).

In that case, the franchise agreement required litigation to be conducted in New Jersey and selected

New Jersey law as the governing law. *Id*. at *1-2. The California Addendum in that case stated

that "[t]he Franchise Agreement requires venue to be limited to New Jersey. This provision may

not be enforceable under California Law." *Id*. at *2. The defendant argued that "there was no

meeting of the minds on the forum selection provision because Plaintiff acknowledged that the

forum selection clause may not be enforceable, and that it was subject to state (i.e., California)

law." *Id*. at \*6.  Despite this argument, the court determined that the forum selection clause in the franchise agreement was not invalidated by the language in the California Addendum. *Id.* at \*7.

The District Court for the District of Minnesota faced this same choice of law issue in *Anytime Fitness, Inc. v. Family Fitness of Royal, LLC*, No. 09-3503, 2010 WL 145259 (D. Minn. Jan. 8, 2010). In that case, the plaintiff moved for a temporary restraining order against the defendant, alleging that the defendant was violating a non-compete provision contained in a franchise agreement. *Id*. at \*1.  The plaintiff argued that the Minnesota choice of law provision was controlling, while the defendant argued that the clause in the "state specific addendum" controlled. *Id*. at \*3.  The addendum clause stated, "[T]he Franchise Agreement requires application of the laws and forum of Minnesota. This provision may not be enforceable under California law." *Id*.  The court determined that California law and Minnesota law did not conflict on the enforceability of non-compete clauses during the course of a franchise and applied Minnesota law without undertaking choice of law analysis. *Id*. at \*4.

The Court is also guided by canons of contract interpretation.  First, unambiguous provisions of contracts are to be ascribed meaning "in accordance with [the contract's] plainly expressed intent." *CITGO Asphalt v. Frescati Shipping Co.*, 140 S. Ct. 1081, 1088 (2020). Second, "a court should construe ambiguous language against the interests of the party that drafted it." *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63 (1995).  Third, "a document should be read to give effect to all its provisions and to render them consistent with each other." *Id.*

The Franchise Agreement contains a very clear choice of law provision requiring the application of Virginia law to "all claims which in any way relate to or arise out of this agreement or any of the dealings of the parties hereto." (Compl. Ex. A at 17.)  However, the addition of the following clause in the California Addendum adds ambiguity to the issue: "California Business

and Professions Code Sections 20000 through 20043 provide rights to the franchisee concerning termination or non-renewal of a franchise.  If the franchise agreement contains a provision that is inconsistent with the law, the law will control."  It is unclear whether sections 20000 through 20043 exclusively apply to issues of "termination or non-renewal" or apply in any situation covered by those statutes.  The Court must resolve that ambiguity in favor of Defendants.  This clause is not a choice of law clause, nor does it invalidate the choice of law clause in the Franchise Agreement.  However, it does modify the Virginia choice of law clause.  Consistent with the intent of the parties, the complete agreement (Franchise Agreement and California Addendum) calls for Virginia law to apply except for situations where Virginia law is inconsistent with California Business and Professions Code Sections 20000 through 20043.

### B. Motion to Dismiss or Transfer

Defendants seek to have this civil action transferred to the District Court for the Southern District of California, pursuant to 28 U.S.C. § 1404(a). (Def. Supp. Mem. at 16, ECF No. 28.)  Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to a district where it might have been brought if transferring the action would be "[f]or the convenience of the parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a).  This is a two-step inquiry: "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003).

### 1. Venue in Transferee Forum

Defendants request that the Court transfer this action to the District Court for the Southern District of California.  In a civil action, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "a judicial

9

district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391.  The Complaint alleges that Defendants owned and operated a Liberty Tax franchise in Palm Desert, California. (Compl. ¶ 1.)  The core allegation is that Defendants are continuing to operate a tax preparation business at the Palm Desert location in violation of the Franchise Agreement.  (*Id.*)  Palm Desert, California, is within the Southern District of California.  Thus, the bulk of the events giving rise to the claims occurred in that district, and the action could have been brought in that district.

### 2. Balance of § 1404(a) Convenience and Justice Factors

In the Fourth Circuit, district courts "consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F.3d 436, 444 (4th Cir. 2015).

#### i. Plaintiff's Choice of Venue

Plaintiff's choice of venue is "entitled to substantial weight. However, the weight accorded to this choice 'varies with the significance of the contacts between the venue chosen by the plaintiff and the underlying cause of action.'" *Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 869 (E.D. Va. 2013) (internal citations omitted).

Plaintiff is seeking to litigate in its home forum.  Plaintiff's principal place of business is in Virginia Beach, Virginia, which is in the Eastern District of Virginia. (Compl. ¶ 3; *see also* Pl. Supp. Br. at 8-9 (referencing a plaintiff's "venue privilege").)  Further, Plaintiff contends that the forum selection clause is valid. (Pl. Supp. Br. at 8.)

Defendants argue that Plaintiff was aware or should have been aware that California has a strong public policy in favor of providing a local forum for local franchisees. (Def. Supp. Br. at 17.)  Defendants contend that by conducting franchise business in California, plaintiff cannot complain about being required to litigate in California. (*Id*.)

Courts have given this factor less weight when the actions giving rise to the claim occurred outside of the home district of the plaintiffs. *See, e.g.*, *JTH Tax, Inc. v. Houle*, No. 2:11cv66, 2011 WL 5006941, at *2 (E.D. Va. 2011) ("That weight is lessened, however, because none of the allegedly infringing actions giving rise to this complaint occurred in Virginia.").

Thus, this factor weighs in favor of Plaintiff, but its weight is lessened by the fact that most actions giving rise to the claim occurred outside of the Commonwealth.

### ii. Witness Convenience and Access to Sources of Proof

The convenience of the witnesses is often dispositive when determining whether to transfer an action. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003); *Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988). "Assessment of this factor generally requires a court to consider, among other things, the 'ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process.'" *Global Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 899 (E.D. Va. 2015) (quoting *Samsung Elecs. Co. v. Rambus Inc.*, 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005)).  The moving party must provide reliable evidence identifying the witnesses involved and specifically describing their expected testimony. *Koh*, 250 F. Supp. 2d at 636.

Defendants contend that the alleged misconduct took place in California and that "the critical witnesses and evidence are in California, not Virginia."  (Def. Supp. Br. at 16, 18.)  The alleged breach and the "lost business" were in California. (*Id*. at 18.)

Plaintiff again relies on the forum selection clause noting that "mere inconvenience does not render a valid choice for venue under both a forum selection clause and 28 U.S.C. § 1391 incorrect." (Pl. Supp. Br. at 8.)  Further, Plaintiff notes that the parties entered into the Franchise Agreement in Virginia. (*Id*.)

Neither party provided specific information on their witnesses or their expected testimony. As such, this factor weighs in neither party's favor. *See JTH Tax, Inc. v. Hines*, No. 2:15cv558, 2016 WL 4582081, at *6 (E.D. Va. July 26, 2016) (citing *Bd. of Trustees*, 702 F. Supp. at 1258).

<u>iii. Convenience of the Parties</u>

Ordinarily, when the parties have entered into a contract with a valid forum selection clause, courts should abide by the parties' agreement on the forum and should only transfer the action if there are "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine Constr. Co.*, 571 U.S. at 62; *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 702 (E.D. Va. 2020).  Further, this factor typically weighs against a transfer if it would merely shift the balance of the conveniences from one party to another. *Prod. Grp. Int'l v. Goldman*, 337 F. Supp. 2d 788, 799 (E.D. Va. 2004).

Defendant contends that it is inconvenient to litigate in Virginia due to his age and limited financial resources. (Def. Supp. Br. at 18.)  He notes that Plaintiff is a "huge company" that already conducts business in California. (*Id*.)

Plaintiff relies on the forum selection clause noting that "mere inconvenience does not render a valid choice for venue under both a forum selection clause and 28 U.S.C. § 1391 incorrect." (Pl. Supp. Br. at 8.)

As explained in this opinion's Choice of Law discussion, the Court has determined that the forum selection clause is not valid where  inconsistent with California Business and Professions

12

Code Sections 20000 through 20043, as the parties' intended portions of the agreement to be governed by California law. However, this factor still weighs against transfer as it would merely shift the inconvenience of travel to Plaintiff.

iv. The Interests of Justice

The interest of justice factor includes a consideration of the public interest, and it deals with "systemic integrity and fairness." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006). "Fairness is assessed by considering docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.* This factor is intended to "encompass all those factors bearing on transfer that are unrelated to the other three factors." *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007).

Defendant argues that it is in the interest of justice to litigate this dispute where the allegedly wrongful conduct occurred. (Def. Supp. Br. at 18.) Further, California has expressed a strong public policy in favor of California franchisees litigating in California. (*Id.* at 19.) Plaintiff did not address this factor in any of its briefings to the Court.

Once again, the Court must address the forum selection clause in the Franchise Agreement. The Fourth Circuit routinely enforces forum selection clauses as a forum selection clause "represents the parties' agreement as to the most proper forum . . . [and] protects their legitimate expectations and furthers vital interests of the justice system." *Whitaker v. Monroe Staffing Servs.*, 42 F.4th 200, 209 (4th Cir. July 22, 2022) (internal citations omitted). As previously discussed, the intent of the parties was to have California law apply to certain aspects of the contract. The California Addendum explicitly states that the forum selection clause may not be enforceable.

13

(ECF Nos. 16-2, 19-3.))  Given this acknowledgement, the parties could legitimately expect to litigate in California.

Further, California has a strong public policy interest in having franchisees located in California litigate in California. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495-98 (9th Cir. 2000) (holding that California code "§ 20040.5 expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue"); *Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176, 2018 WL 5809428, at *2 (N.D. Cal. Nov. 6, 2018) (recognizing a strong public policy "to protect employees from litigating labor disputes outside of their home state").

Additionally, the provisions that are likely to be dispositive in the action will likely be governed by California law, not Virginia law.  As previously noted, the California Addendum states that California Business and Professions Code Sections 20000 through 20043 control whenever the Franchise Agreement and those laws conflict.  As such, the United States District Court for the Southern District of California would better suited to address questions of California law.  Familiarity with the governing law is a factor that is considered when analyzing the interests of justice. *See, e.g.*, *Landers v. Dawson Constr. Plant, Ltd.*, Nos. 98-2709 & 98-2763, 1999 WL 991419, at *2 n.2 (4th Cir. Nov. 2, 1999) (noting that a West Virginia federal court would be more familiar with West Virginia law than a Pennsylvania federal court); *Del Zotto v. Universal Physician Servs., LLC*, 214 F. Supp. 3d 499, 502 (D.S.C. 2016) (noting that the district court's familiarity with the governing law is a factor under this prong on analysis); *Bertnick v. Home Fed. Sav. & Loan Ass'n*, 337 F. Supp. 968, 971 (W.D. Va. 1972) ("Consideration should also be given to judicial familiarity with the governing laws and the relative ease and practicality of trying the case in the alternate forum.").

The Court holds that the interest of justice prong weighs heavily in favor of transferring the case to the United States District Court for the Southern District of California. Plaintiff provided a California Addendum that essentially acknowledges California's strong public policy on this area of law. The California Addendum implies that franchisee disputes would be litigated in California. The weight of this prong is sufficient to outweigh the other prongs of the § 1404 test.

Therefore, the Court will grant Defendants' Motion to Transfer.

### 3. Motion to Dismiss

Defendants' filing included a Motion to Dismiss. (ECF No. 18.) Given that the Court will grant the Motion to Transfer, the Court will deny the Motion to Dismiss as moot.

## V. CONCLUSION

For the reasons detailed above, the Court will deny Plaintiff's Motion to Strike (ECF No. 23) and grant in part and deny in part Defendants' Motion to Dismiss or Transfer (ECF No. 18).

An appropriate Order shall issue.

_____/s/_____
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: August 31, 2022

15